IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SETH DANIEL BUFFINGTON, #1371074, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:07-CV-0260-P |
| | ) | ECF |
| LUPE VALDEZ, et al., | ) | |
|     Defendants. | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court in implementation thereof, this cause has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case:   This is a *pro se* civil rights action brought by a state inmate pursuant to 42 U.S.C. § 1983.

Parties:   Plaintiff is presently incarcerated within the Texas Department of Criminal Justice -- Correctional Institutions Division (TDCJ-CID). He was incarcerated at the Dallas County Jail during the events at issue in this case.

Defendants are Dallas County Sheriff Lupe Valdez, the Dallas County Sheriff Department, Executive Director of Texas Commission on Jail Standards Terry Jullian, Dallas County Commissioner John Wiley Price, Judge Vickers Cunningham, and Dallas County.

The Court has not issued process in this case pending preliminary screening. On February 14, 2007, the Magistrate Judge issued a questionnaire to Plaintiff, who filed his answers thereto on March 22, 2007. Thereafter, Plaintiff filed a motion for leave to amend the

complaint, seeking to raise new and more detailed claims. Contemporaneously with the filing of this recommendation, the Court entered an order granting Plaintiff's motion to amend.

Statement of the Case: The amended complaint challenges the conditions of Plaintiff's pre-trial confinement at the Dallas County Jail lasting approximately nine months. Specifically, Plaintiff complains about the overcrowded and unsanitary conditions, the denial of access to the courts and counsel, and the unreasonably high bond placed on him. He alleges that "[p]lacing inmate[s] in [a] vacuum of communication with unsanitary conditions constituted 'punishment' and exceeded the least restrictive means necessary to assure trial presence of unconvicted detainee[s] before trial." (Amended Complaint at 5). He further alleges that the "severe conditions [of the jail] maligned due process, access to effective assistance of counsel, access to courts, and to other guaranteed rights; and generally injured the mental and emotional ability of Plaintiff to prepare defense and to appear before a court of law." (*Id.* at 6). Plaintiff seeks monetary relief. (*Id.* at 7-8).[1]

Findings and Conclusions: The Court permitted Plaintiff to proceed *in forma pauperis*. His complaint is, thus, subject to screening under 28 U.S.C. § 1915A, which imposes a screening responsibility on the district court. Section 1915A reads in pertinent part as follows:

---

[1] In addition to monetary damages, Plaintiff requests injunctive and declaratory relief. Plaintiff's transfer from the Dallas County Jail to TDCJ, before the filing of this complaint, rendered his claims for declaratory and injunctive relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (even if inmate was able to establish constitutional violation, his transfer to another prison rendered moot his claim for declaratory and injunctive relief) (citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (prisoners who were no longer in Retrieve Unit could not seek injunctive relief against conditions of confinement there). Any suggestion of relief based on the possibility of a transfer back to the Dallas County Jail is too speculative to warrant relief. *See Herman*, 238 F.3d at 665 (citing *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir.1987)).

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which *a prisoner* seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b) (emphasis added). *See also* 28 U.S.C. § 1915(e)(2)(B) (applicable to all *in forma pauperis* actions); 42 U.S.C. § 1997e(c)(1) (applicable to prison condition cases).

Sections 1915A(b), 1915(e)(2)(B), and 1997e(c)(1) provide for *sua sponte* dismissal if the Court finds that the complaint is "frivolous" or that it "fails to state a claim upon which relief may be granted." A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

1. <u>Conditions of Confinement and Effect on Ability to Prepare Defense in Criminal Case</u>

At the outset, the Court notes that Plaintiff's challenge to the conditions of his pre-trial detention, insofar as they limited his ability to prepare a defense, access the courts, and counsel, may amount to an attack on his underlying conviction. In that respect, his claims are cognizable only in the context of a habeas corpus action pursuant to 28 U.S.C. § 2254. *See Hill v. McDonough*, ___ U.S. ___, 126 S. Ct. 2096, 2101 (2006) (challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus, whereas challenges to the circumstances of confinement may be brought under § 1983); *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973) (same); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (same); *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (same).[2]

---

[2] To maintain a habeas corpus action a plaintiff/petitioner must exhaust his state court remedies. *See* 28 U.S.C. § 2254(b).

Insofar as Plaintiff seeks monetary damages for his underlying conviction, which he claims resulted from his unconstitutional pre-trial detention, his claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372-73 (1994).

2. <u>Civil Rights Allegations</u>

Exhaustion of administrative remedies under 42 U.S.C. § 1997e(a), is mandatory before the filing of any suit challenging prison conditions. *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378, 2382-83 (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Plaintiff's complaint and answers to the questionnaire challenge the adequacy of the Dallas County jail grievance procedure, which he alleges prevented him from fully exhausting his administrative remedies. (Answer to Question 6, and Supplemental filed April 13, 2007). Nevertheless, he Court may dismiss a claim as frivolous or for failure to state a claim without first requiring exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(c)(2).

  A.  <u>Overcrowded and unsanitary conditions</u>

Because the remaining relief seeks monetary damages, the Court must analyze Plaintiff's allegations to determine whether he can establish a sufficient "physical injury." The Prisoner Litigation Reform Act (PLRA) of 1996 requires prisoners filing suit to demonstrate a physical injury to sustain a claim for damages. *See* 42 U.S.C. § 1997e(e); *Harper v. Showers*, 174 F.3d 716, 719 n. 5 (5th Cir. 1999).[3]

In answer to the questionnaire, Plaintiff complains of three different injuries: an injury

---

[3] Section 1997e(e) states: "No federal civil action may be brought by a prisoner....for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §§ 1997e(e).

4

related to the general overcrowded and unsanitary conditions; an injury associated with a slip and fall injury on a slippery staircase; and an injury caused by the denial of new prescription eyeglasses. (Answer to Question 4). The Court will address each claimed injury in turn under § 1997e(e).

Plaintiff complains "of severe fatigue, delirium, and sleep deprivation" from having to sleep on a concrete floor under a stairwell, and then later from "attempting to sleep within arms reach of intense double-florescent lighting," while inmates were "constant[ly] beating on windows all night long. (Answer to Question 4). He further complains that the loss of sleep not only caused "loss of memory and inability to concentrate," but also resulted in psychological deprivations, including "irrational defenseless behavior" and "[i]nability to make logical self-preserving decisions essential to survival. (Answer to Question 5).

While Plaintiff alleges "general weakening of body defenses against viral infections," he does not provide any detail as to any physical injuries endured as a result of the general weakening of his body. (*Id.*). Nor does he allege that his overall weakened physical condition required medical attention. (Answer to Question 4 and 5). The Court must, therefore, conclude that the only injuries which Plaintiff suffered as a consequence of the overcrowded and unsanitary conditions at the Dallas County Jail were mental pain and suffering.

Plaintiff's second physical injury fares no better. Plaintiff complains of "scrapes and bruises" endured from falling down a stairwell which had become slippery as a result of water condensation caused by water running constantly in two upstairs showers which could not be turned off for weeks. (Answer to Question 4). Plaintiff concedes his injury consisted of a "[s]crape on the back of his leg behind shin, a "[b]ruise on [a] hip," and a "[t]wisted wrist

[endured] while attempting to restrain [from the] fall." (Answer to Question 5). Plaintiff's own allegations confirm that his bruises were nothing more than a de minimis injury, and that they did not require medical attention. *Cf. Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (state prisoners, alleging Eighth Amendment violation arising out of their twenty-four hour placement in unsanitary isolation cell, could not recover for mental or emotional damages absent more than de minimis physical injury; only claimed injury, nausea suffered by one prisoner, was not severe enough to warrant medical attention).

The third injury relates to the failure to replace his broken prescription eye glasses, which were necessary for face recognition and for conducting research in the law library. (Answer to Question 4). Plaintiff explains that one of the lenses in his prescription eye glasses fell out and broke after a screw became loose. (Answer to Question 5).[4]

Apart from his inability to recognize faces and conduct research in the law library, Plaintiff does not identify any physical injury to his eyes or otherwise after his eye glasses broke. Therefore, he did not suffer a *per se* physical injury in connection with his broken eye glasses.[5]

Because Plaintiff did not suffer any physical injury as a result of the conditions of his pretrial confinement, § 1997e(e) bars his request for monetary damages. *See Harper*, 174 F.3d at

---

[4] Plaintiff submitted his broken eye glasses as an exhibit in this case. (*See* Court's copy file).

[5] Nor does Plaintiff complain of enduring any physical injury as a result of being denied clean clothing throughout his pre-trial detention alleged for the first time in his amended complaint. (*See* Amend. Complaint at 5). According to Plaintiff, he was required to attend court proceedings with the clothing in which he was arrested, and which had remained unwashed throughout his detention. (*Id.*). He was also required to keep on wearing his dirty one-piece jail jumper because the Dallas County Jail failed to provide weekly laundry service or an alternate set of clean clothing, thus forcing inmates to employ whatever means possible to wash the jumpers, even if against jail rules. (*Id.*).

719.[6]

B. Denial of access to the courts and the law library

The amended complaint expands Plaintiff's conclusory allegations that he was denied access to the courts during his pre-trial detention at the Dallas County Jail. Plaintiff alleges that writing supplies were scarce, that carbon paper was not permitted, and that a photo copier was not available in or through the law library. While only felt-tip washable water or alcohol based ink pens were allowed, he claims they were unsuitable for legal work. He further claims that he was denied law library access on a repeated basis. (Amend. Complaint at 4-5, and Exh. 1 to answers to questionnaire filed on Mar. 22, 2007).

The above allegations must be analyzed under the more general right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817, 822 (1977), the Supreme Court held that prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. *See also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). "This right of access for prisoners is not unlimited, however; rather, it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Id.* at 310-311 (quoting *Lewis v. Casey*, 518 U.S. 343, 355, 116 S.Ct. 2174, 2182 (1996)). Before an inmate may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that he suffered "actual injury" -- i.e. that the denial of

---

[6] The prohibitive feature of § 1997e(e), requiring physical injury before recovery, does not apply in the context of requests for declaratory or injunctive relief sought to end an allegedly unconstitutional condition of confinement. *See Harper*, 174 F.3d at 719. Plaintiff, however, was transferred to TDCJ shortly before the filing of this action. As noted previously, his release from confinement renders his request for prospective injunctive relief moot. *See supra* Note 1.

access "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. *See also McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an absolute deprivation of access to all legal materials." *Lewis*, 518 U.S. at 353 n. 4.

Plaintiff does not contend that his position as a litigant was prejudiced in any way during his pre-trial detention. The amended complaint does not allege that Plaintiff sought to challenge a prior conviction or the conditions of his confinement while at the Dallas County Jail. Rather, his allegations focus on the criminal charge which was then pending against him, and on which he was represented by appointed counsel. (Amend. Compl. at 4-6). When a criminal defendant is represented by counsel, he has no constitutional right of access to a law library in connection with his criminal proceedings. *See Caraballo v. Federal Bureau of Prisons*, 124 Fed. Appx. 284, 285 (5th Cir. 2005) (federal inmate who had court-appointed counsel on direct appeal had no constitutional right of access to a law library in preparing his defense); *Gordon v. Police Jury of Jefferson Davis Parish*, 2001 WL 1468183, *1 (5th Cir. 2001) (unpublished per curiam) (state inmate who was represented by counsel in criminal proceeding was not entitled to relief on claim that he did not have access to law library).

Accordingly, Plaintiff's claims of denial of access to the court and the law library lack an arguable basis in law and should be dismissed with prejudice as frivolous.

### C. Denial of attorney client privilege to secure effective assistance of counsel

Next, Plaintiff alleges that the conditions of confinement at the Dallas County Jail deprived him of the opportunity to conduct a private attorney-client phone call or meeting.

8

(Amend. Compl. at 4). He alleges that all out-going calls were recorded, and that the $4.00 charge for collect calls obstructed his ability to call attorneys. Calls to mobile and cellular telephones from the collect-only jail telephones were also restricted. Attorney-inmate booths were not sound proof; nor was confidential seating for attorney-client communication available. (Amend. Compl. at 5).

The Fifth Circuit has long recognized that "[t]he attorney-client privilege constitutes an evidentiary privilege that is secured by state law, and not by the Constitution or laws of the United States. As a creature of state law, the attorney-client privilege cannot be asserted as a basis for recovery under § 1983." *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981).

Insofar as Plaintiff seeks to allege a Sixth Amendment violation to effective assistance of counsel, his claim fares no better. Plaintiff does not allege that he was unable to call his defense attorney through the collect-call telephone system, merely that those phone calls were not private. Moreover, nothing prevented Plaintiff from using the mails to communicate with his attorney.

### D. Denial of right to reasonable bond

Lastly, Plaintiff challenges the reasonableness of his pre-trial bond. Such a claim is not cognizable in a civil rights action. The remedy available on a claim that bail is excessive is via a writ of habeas corpus filed in the state court in which the criminal case is pending. *Ex parte Tucker,* 977 S.W.2d 713, *715 (Tex. App. -- Fort Worth, 1998) (citing *Ex parte Gray,* 564 S.W.2d 713, 714 (Tex. Crim. App. 1978) (proper method to challenge excessiveness of bail prior to trial is by application for writ of habeas corpus)). However, a conviction would render moot such a claim.

3. <u>Pending motions</u>

After filing his answer to the questionnaire, Plaintiff moved for the appointment of counsel. Such a motion should be denied because he cannot show that his case presents exceptional circumstances warranting the appointment of counsel. *See Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994) (a plaintiff in a civil rights action is not entitled to court appointed counsel as a matter of law); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) (appointment of counsel warranted only if case presents exceptional circumstances).

Plaintiff's pleadings challenge the adequacy of the law library at the Rudd Unit, where he was first confined following his conviction and transfer from the Dallas County Jail. (*See* Plaintiff's response to filing fee order filed February 22, 2007). In his motion to order transport, filed on April 13, 2007, Plaintiff seeks to be transferred to a TDCJ Unit with a complete law library.

While the Court is mindful of the limitations which Plaintiff faced while drafting the original and amended complaints in this case, any claim seeking to challenge the adequacy of a TDCJ unit law library is separate and distinct from Plaintiff's claims challenging the conditions of confinement at the Dallas County Jail. Moreover, it appears that Plaintiff was recently transferred to the Goree Unit in Huntsville, Texas. *See* TDCJ Offender Information Detail dated July 31, 2007, *see* http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber-07559672. Accordingly, Plaintiff's motion seeking a transfer to a TDCJ Unit with a complete law library is now moot.

RECOMMENDATION:

For the foregoing reasons, it is recommended that this action be DISMISSED with prejudice as frivolous, *see* 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) (i), and 42 U.S.C. § 1997e(c)(1), and that Plaintiff's motions for the appointment of counsel and to order transportation/transfer (Docket #10 and #11) be DENIED as moot.

A copy of this recommendation will be MAILED to Plaintiff Seth Daniel Buffington #1371074, at the Goree Unit, 7405 Hwy. 75 South, Huntsville, TX  77344.[7]

Signed this 6th day of August, 2007.

*Wm. F. Sanderson, Jr.*
_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.

---

[7] Plaintiff is reminded that he must keep the Court appraised of his change of address at all times by filing a notice of address change.  While the Court directs that this recommendation be mailed to the Goree Unit, his address on the docket sheet will remain the one at the Rudd Unit until a notice of address change is received.